UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL BULLOCK,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN SECURITY PROGRAMS, INC.,<br><br>    Defendant. | Civil Action No. 16-1645 (JEB) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Michael Bullock alleged in his original Complaint that his employer, Defendant American Security Programs, Inc., had breached a settlement agreement with him and his union by failing to help him get a job as a security guard at one of its worksites. In a prior Memorandum Opinion, this Court held that such a breach-of-contract claim was preempted by federal labor law – specifically, the Labor Management Relations Act – but it permitted Bullock to proceed under § 301 of that statute. See Bullock v. Am. Security Program, Inc., 2016 WL 6459556 (D.D.C. Oct. 31, 2016). He now moves to amend his Complaint to add counts for invasion of privacy, negligent maintenance of personnel records, and wrongful discharge. As ASP correctly points out that none of these proposed claims passes muster, the Court will deny the Motion as futile.

### I.  Background

Since the prior Opinion lays out in detail the history of Bullock's employment dispute with ASP, only a brief recap is necessary here. ASP suspended his employment at a Federal

Protective Service worksite because he lacked an active "suitability determination" or clearance. Id. at *1. After Plaintiff grieved that suspension with his Union – the United Government Security Officers of America International Union – ASP settled the matter by agreeing to assist him in finding work while his clearance was pending. Id. at *2. His pleadings implied that, at some subsequent point, he was terminated and never placed at any worksite. Id.

Bullock thus filed this action; although his Complaint was very abbreviated, see ECF No. 1-1, he fleshed out the facts in opposing ASP's first motion to dismiss. See ECF No. 8. In denying that first motion, the Court initially determined that Plaintiff's cause of action for breach of contract was preempted by Section 301 of the LMRA. Bullock, 2016 WL 6459556, at *3. Concluding that Bullock had nonetheless stated a plausible right to relief under that provision, the Court allowed his suit go to forward, construing it as a § 301 claim. Id. at *4. After a scheduling conference took place, Bullock brought the instant Motion seeking to add three more counts to his Complaint. See ECF No. 19.

The first two – invasion of privacy and negligent maintenance of personnel records – stem from the same additional facts. Plaintiff alleges that on July 25, 2013, Deshawn Thornton, the Chief Shop Steward for the Union, wrote to an ASP executive seeking records relating to Bullock. See id. at 2 & Exh. 2. A week later, Thornton discovered that Plaintiff's "entire personnel file was left unattended and unsecured on a table located at an ASP worksite." Id., Exh. 3 (Affidavit of Deshawn Thornton). "The table is located in a very common area[,] which is frequently used by other staff members. The table is also regularly used as a lunch table. Mr. Bullock's entire personnel file was noticed on this table during regular business hours." Id. There is no allegation that anyone actually looked at the contents.

2

Plaintiff's third proposed addition is a count for wrongful termination. The facts he sets forth in support are not entirely pellucid. He alleges that the settlement agreement reached after his grievance "required specific training for a non-FPS site in Maryland[,] which plaintiff interviewed for with Mr. Rick Lewis[,] an ASP official. After plaintiff completed the training, the decision-making officials with ASP became shockingly unavailable. Leaving Plaintiff with no remedy." Mot. at 3. In addition, "ASP could not show proof that the necessary paperwork was forwarded to the government on behalf of plaintiff as they repeatedly claimed." Id. Bullock indicates that he was "eager to move forward on [a non-FPS] worksite," but that ASP somehow "returned plaintiff's [necessary] handgun permit to the Maryland state police," leading to its revocation. Id. at 4. Bullock alleges that he "has never received any notification as to the reason for his termination." Id.

ASP opposes Bullock's proposed amendment on the ground that none of the three additional counts is hardy enough to survive a motion to dismiss.

## II.    Legal Standard

A plaintiff may amend his complaint once as a matter of course within 21 days of serving it or within 21 days of the filing of a responsive pleading. See Fed. R. Civ. P. 15(a)(1). Otherwise, he must seek consent from the defendant or leave from the Court. The latter "should [be] freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave to file an amended complaint, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962). In this Circuit, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason."

3

Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Furthermore, under Rule 15, "the non-movant generally carries the burden in persuading the court to deny leave to amend." Nwachukwu v. Karl, 222 F.R.D. 208, 211 (D.D.C. 2004).

It is clear, however, that amendment should not be permitted if it would be futile.  In other words, if the new causes of action would still be deficient notwithstanding the proposed amendment, courts need not grant leave.  See In re Interbank Funding Corp. Securities Litigation, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.") (citing Foman, 371 U.S. at 182, for proposition that "'futility of amendment' is permissible justification for denying Rule 15(a) motion"); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.") (citations omitted).

**III.   Analysis**

In opposing amendment here, ASP contends that each count is fatally infirm, but for different reasons.  The Court thus considers each separately.  As it ultimately denies Plaintiff's Motion, it need not also address Bullock's failure to comply with Local Civil Rule 15.1, which requires that a motion to amend "be accompanied by an original of the proposed pleading as amended."

    A.    Invasion of Privacy

ASP first maintains that Plaintiff's invasion-of-privacy count stumbles over a threshold obstacle – timeliness.  As Defendant correctly notes, the District of Columbia's statute of limitations for this tort is one year.  Greenpeace, Inc. v. Dow Chemical Co., 97 A.3d 1053, 1062 (D.C. 2014).  Bullock here alleges that the violation occurred on August 1, 2013, when his

4

personnel file was left in a common area. Since his original Complaint was not filed until July 2016 – and his current Motion to Amend not until December 2016 – he appears to be out of luck on this claim. This is particularly true where Plaintiff does not argue that his discovery of this incident occurred at such a time as to delay the accrual of his claim for limitations purposes. See Doe v. Medlantic Health Care Group, Inc., 814 A.2d 939, 945-46 (D.C. 2003) (applying discovery rule in case alleging invasion of privacy).

Even assuming that the claim here accrued within a year of its filing, ASP also explains why the count is substantively defective. Like many jurisdictions, the District of Columbia recognizes four theories for invasion of privacy: "1) intrusion upon one's physical solitude or seclusion; 2) public disclosure of private facts; 3) publicity that places someone in a false light in the public eye; and 4) appropriation of the name or likeness for another's benefit." Grunseth v. Marriott Corp., 872 F. Supp. 1069, 1074 (D.D.C. 1995) (citing Vassiliades v. Garfinckel's, Brooks Bros., 492 A.2d 580, 586 (D.C. 1985)). Although Plaintiff conflates the theories somewhat – alleging "unreasonable publicity given to one's private life," Mot. at 2 – it appears that he sensibly chooses door number two: public disclosure of private facts. Such a cause of action comprises the following elements: "(1) publicity, (2) absent any waiver or privilege, (3) given to private facts (4) in which the public has no legitimate concern (5) and which would be highly offensive to a reasonable person of ordinary sensibilities." Wolf v. Regardie, 553 A.2d 1213, 1220 (D.C. 1989).

The problem here is with the first element inasmuch as Bullock has articulated no actual disclosure. All he has alleged is that his personnel file was found in a common area, unattended and unsecured. There is no allegation that anyone opened it, looked inside, or read any of the materials contained therein. Even if Thornton or a few others had seen the contents, that is still

5

not enough because "to establish the tort, the private facts at issue must be 'made public,' by communicating [them] to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Beyene v. Hilton Hotels Corp., 815 F. Supp. 2d 235, 254 (D.D.C. 2011) (quoting Restatement (Second) of Torts § 652D cmt. a). In other words, "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Id. (quoting same).

This count, therefore, does not survive in its present form.

B.   Negligent Maintenance

Although creative, Bullock's second proposed additional count meets the same fate. He alleges that ASP is liable for the "negligent maintenance of personnel records" based on the same purported observation of his personnel file in a common area. Plaintiff never provides any authority for the proposition that such a cause of action exists in the District of Columbia, and this Court has found none either. In addition, he never mentions what actual duty the Company owes to its employees regarding such files. See Prouty v. Nat'l R.R. Passenger Corp. 572 F. Supp. 200, 206 (D.D.C. 1983) ("In the instant case, however, plaintiff has not indicated that Amtrak was charged with any specific duty to maintain employment records, imposed by statute or law, that would give rise to a negligence action."); Stevens v. Sodeo, Inc., 846 F. Supp. 2d 119, 127 (D.D.C. 2012) (where another employee cashed checks in plaintiff's name, dismissing claim for negligently failing to safeguard plaintiff's identity, as plaintiff never identified any basis for defendant's purported duty). Even if some duty existed, Plaintiff is not complaining that the files were not kept accurately or that they were lost or misplaced; instead, he implies only that they should have been kept private. Yet if there is no tortious act in the intentional

6

sharing of such files with a few persons, see Section III.A, *supra*, there surely is none in negligently doing so.

        C.      Wrongful Discharge

Essaying a variant of his breach-of-contract count, Bullock also seeks to add a claim for wrongful discharge. He alleges that "ASP entered into a binding agreement with UGSOA [the Union], both orally and written." Mot. at 3. The Company then allegedly breached that agreement by its acts described above relating to worksites and his handgun permit. Id. at 3-4. Such actions "further demonstrate[d] that ASP had absolutely no intentions of fulfilling its part of the binding agreement with USGOA on plaintiff's behalf." Id. at 4.

Such an allegation is, of course, nothing other than a claim for breach of the contract between the Union and the Company. The Court previously explained that such a count was preempted by Section 301 of the LMRA:

> Section 301 grants federal courts jurisdiction over disputes "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). This provision thus serves as the basis for federal preemption of "any [state] cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

Bullock, 2016 WL 6459556, at *3. The Court, accordingly, will not permit Bullock to decant a new wrongful-discharge claim into an old breach-of-contract bottle.

## IV.  Conclusion

As Plaintiff may proceed to discovery on his § 301 claim but no other, the Court will deny his Motion for Leave to Amend without prejudice. A contemporaneous Order so stating will issue this day.

7

                                          /s/ *James E. Boasberg*
                                          JAMES E. BOASBERG
                                          United States District Judge

Date:  February 2, 2017